```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

MARILYN OWENS,                    )
                                  )
           Plaintiff,             )
                                  )
     vs.                          )     No. 4:04-CV-875 (CEJ)
                                  )
PARAGON LIFE                      )
INSURANCE COMPANY,                )
                                  )
           Defendant.             )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Paragon Life Insurance Company for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Marilyn Owens, *pro se*, has filed a response in opposition.

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA). In the complaint, she allege that the defendant failed to promote her, subjected her to a hostile work environment, and ultimately terminated her employment because of her race and age.

### I. Background

The defendant is in the business of selling variable and group universal life insurance policies, primarily to corporations who offer life insurance to their key personnel and executives. Plaintiff, an African-American woman, was hired by defendant in 1997 as a temporary worker. On January 2, 1998, plaintiff was hired as a permanent, full-time employee.

Plaintiff was assigned to the Policy Issuance Department, where her duties eventually came to include assembling newly-issued insurance policies, collating pages in the policies, including illustrations with the policies where required, and mailing the finished policies to the policyholders. In order to keep track of where policies were in the process and who had performed each required task, plaintiff and other employees were required after December 2002 to utilize a computerized tracking system which allowed the defendant to determine the date the task was performed and the identity of the employee who performed it.

On February 21, 2003, defendant issued plaintiff a preliminary performance warning. According to the "performance log" and documentation memorandum created by Christine Kramer, plaintiff's supervisor, the preliminary warning was given because of four performance errors that were attributed to plaintiff. The errors and plaintiff's responses to them are as follows:

> (1) On February 4, 2003, a policy was sent to an insurance broker (Marsh Financial) instead of to the policyholder. After verifying that plaintiff had mailed the policy, Kramer confronted plaintiff with the error. Plaintiff acknowledged that she had made the mistake and explained that the policy had possibly gotten mixed in with some other documents. In response to the motion, plaintiff states that she does not recall mistakenly sending the policy to Marsh Financial.
>
> (2) On February 11, 2003, an required illustration was omitted from a customer's policy. Plaintiff states that this error was the fault of Debie Pozniak, a co-worker, who was responsible for mailing the policy and should have detected the omission.
>
> (3) On February 19, 2003, Kramer discovered that plaintiff had failed to update the tracking system with the mailing dates for nine policies that had been mailed.

> According to Kramer, when asked about the error, plaintiff responded that she had been in a hurry. In her deposition, plaintiff stated that she did not recall this conversation with Kramer. In response to the motion, plaintiff states that the nine errors in tracking charged to her were the result of "a problem with the tracking systems," and that she informed Kramer of this during their meeting.
>
> (4) On February 19, 2003, the defendant learned that Christopher Lonergan, an executive of one of defendant's clients, had received a portion of policy issued to Gregory Durig that contained confidential information. Upon checking the tracking system, Kramer determined that the policy had been assembled and mailed by plaintiff.

Kramer met with plaintiff and explained to her that her errors had a negative effect on the defendant's reputation and could cause the company to lose business. Kramer told plaintiff that she and members of senior management felt that plaintiff "was not performing her job at the level needed." Kramer warned plaintiff that her failure to demonstrate "immediate and sustained improvements in all areas of the job" could result in further disciplinary action, including termination.

After the preliminary warning, plaintiff's performance problems continued. On April 3, 2003, Kramer found that plaintiff had either failed to enter mailing dates or had entered incorrect mailing dates into the tracking system for six policies. On April 17, 2003, a random audit revealed that plaintiff had made omissions in updating two policies and that she had failed to save an illustration to the proper file for another policy. Because of these errors, Kramer issued plaintiff a final warning on April 22, 2003. Plaintiff was told that a recommendation for termination

would be made, without further notice, if her performance did not improve. Plaintiff argues that she "[does not] believe [she] could have made those mistakes."

In her deposition, plaintiff testified that she knew that she had to be "extra careful" after receiving the final warning. Nevertheless, on June 9, 2003, a policyholder, Charles Stewart, reported that he had received portions of another customer's policy which included confidential information. Kramer conducted an investigation which revealed that plaintiff was responsible for the mistake. Plaintiff testified that she knew that sending a policyholder's information to the wrong person was a serious problem, and that this mistake rarely occurred. Plaintiff could not identify any other employee who had committed this kind of error.

As a result of this incident, Kramer sent a memorandum to Vice President John Tremmel on June 12, 2003, recommending termination. Plaintiff was notified of her termination on June 19, 2003. She was then 49 years old.

In her complaint, as well as in her other filings and her deposition, plaintiff alleges that John Tremmel, Mechelle Jarvis (plaintiff's former supervisor) and Kramer discriminated against her. Specifically, she alleges that she was regularly harassed and yelled at, subject to intense scrutiny, blamed for the errors or misdeeds of other workers, and punished for errors that would have been excused or overlooked if committed by other workers. She alleges that this mistreatment is the result of racial and age

bias. In support of these allegations, plaintiff cites a perceived disparate treatment of both her and other African-American employees as compared to Caucasian workers, and three racially offensive comments she overheard or had directed toward her by former co-worker Pozniak. Plaintiff states that in 2001, Pozniak asked her and a fellow African-American co-worker "why you all don't like to be called that N word." Second, plaintiff alleges that Pozniak referred to an African-American temporary employee as "you monkey." Third, during a confrontation over plaintiff's complaints to Kramer about her in 2003, Pozniak allegedly said "you nigger" to plaintiff.

Along with her response to defendant's statement of uncontroverted facts, plaintiff submits the statements of four former employees. Dennis Jefferson's statement (denoted as an affidavit) is not admissible for consideration in a motion for summary judgment, because it is incomplete, not sworn to and not notarized or otherwise certified, and thus does not qualify as an affidavit. Federal Rule of Civil Procedure 56(c) allows for consideration of affidavits, not unsworn, unsigned and unattested statements. Paulette West's statement speaks only to her suspicion that her own work had been tampered with, and fails to allege personal knowledge of such conduct in connection with plaintiff, or that Kramer was notified of a possible problem. As such, its value in this case is limited. In a notarized statement, Bobbette Luckett states that she "witnessed several incidents of blatant racism" against African-American employees, including plaintiff.

She does not, however, describe any of the incidents. She also states that plaintiff was harassed, but again does not provide any specific information. Tracy Shepard states in her notarized statement that she observed plaintiff save work that would later disappear.

Additionally, plaintiff alleges a variety of abusive behavior by various co-workers. Plaintiff alleges that Mechelle Jarvis shot her in the behind with a rubber band and would "raise her voice at [plaintiff] if something wasn't right in policy issuance," that Kramer "nitpicked" plaintiff' work and would "stay on [plaintiff's] back all of the time," and a variety of conduct by Pozniak including the use of racial epithets described above.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477

-6-

U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the nonmoving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A. Claim for Wrongful Termination

Title VII provides that it is an unlawful employment practice "to fail or refuse to hire or discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

The Supreme Court set forth the basic procedure for cases alleging discrimination under Title VII in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must establish

a *prima facie* case of discrimination by a preponderance of evidence. The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802. If the defendant carries this burden, then the plaintiff must show by a preponderance of evidence that the defendant's reasons were pretextual.

Plaintiff' complaint raises three separate claims of race discrimination: (1) a wrongful discharge claim, (2) a hostile work environment claim and (3) a failure to promote claim. On the wrongful discharge claim, defendant concedes that plaintiff can show a prima facie claim of discrimination. However, defendant has proffered a "legitimate, nondiscriminatory reason" for terminating plaintiff, specifically her alleged mistakes in assembling, tracking and mailing customer policies. Poor job performance and documented failure to live up to stated expectations are legitimate and nondiscriminatory reasons a company can have for terminating an individual's employment. In support of this assertion, defendant has provided ample documentation that mistakes were made that could reasonably be attributed to plaintiff. Defendant has also submitted the affidavits of Kramer and Tremmel, describing the reasons for their decision to terminate plaintiff.

Because defendant has offered a nondiscriminatory explanation for its actions, the burden shifts back to plaintiff to show that the stated reason is pretextual. Plaintiff asserts that the "poor performance" rationale is mere pretext because she did not commit

-8-

the mistakes cited by defendant, and other employees were not similarly berated or disciplined for mistakes they made.

The test for whether the stated reasons for termination in a case are pretextual is not whether the reasons are accurate or not, but whether the decision maker *believed* the reasons to be accurate. See Johnson v. Ready Mixed Concrete, 424 F.3d 806, 811 (8th Cir. 2005); Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000). In the instant case, plaintiff would have to show that Kramer did not really believe that plaintiff had made the mistakes for which she was blamed and ultimately terminated.

In her response to defendant's statement of uncontroverted material facts and the deposition excerpt submitted as part of the record, plaintiff first asserts that errors on a policy are "normally not blown out of proportion," but in her case were met with yelling and public humiliation by her supervisors. She also states that another employee "lost a [$1 million] policy and was not written up," and that the incident "was swept under the rug." If proved, this would be evidence of disparate treatment and could show that defendant's stated reasons for plaintiff's termination are mere pretext. However, plaintiff has not submitted any evidence regarding this other employee's name or race, or any evidence that this other incident actually occurred. A bare allegation of disparate treatment, without any supporting facts or details, is insufficient to show that a genuine issue of material fact exists.

Plaintiff states that she does not recall mistakenly sending a customer policy to Marsh Financial. Defendant has submitted records of the incident, including a letter from Marsh Financial stating that it had received someone's policy in error. In her affidavit and the report of the incident, Kramer asserts that the tracking system pointed to plaintiff as the responsible party, and that plaintiff admitted responsibility for the error.

Next, plaintiff states that any omission of the required illustration on February 11, 2003, was Pozniak's fault for not double-checking before mailing the policy. Plaintiff alleges that this incident shows disparate treatment in that she was reprimanded while Pozniak was not. This is part of a larger claim of disparate treatment accorded to plaintiff and Pozniak "for the same infractions." However, plaintiff presents no competent evidence to support this broad allegation, either in general or as to this incident in particular. "To be probative evidence of pretext, the misconduct more leniently disciplined must be of comparable seriousness." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005). Plaintiff fails to allege what these "same infractions" were, and thus there is no evidence to support her conclusory statement. As to the February 11, 2003, incident, plaintiff has not demonstrated that failure to double-check the policy for completeness was comparable in seriousness to incorrectly assembling the policy.

Plaintiff asserts that the nine errors in tracking charged to her in the Preliminary Warning were the result of "a problem with

the tracking systems," and that she informed Kramer of this during their meeting. Plaintiff fails to provide any evidence that the tracking systems were incorrectly functioning.

With regard to the tracking errors and inaccuracies attributed to her in the Final Performance Warning of April 2003, plaintiff argues that she "[does not] believe [she] could have made those mistakes." She asserts that the tracking system was accessible and modifiable by anyone, and that someone, most likely Pozniak, altered or tampered with the records in an effort to get plaintiff in trouble. However, she has presented no competent evidence that Kramer had knowledge of any such tampering with regard to the records when she reprimanded plaintiff. The only competent evidence suggesting tampering with plaintiff' work is the affidavit of Tracy Shepard, a former coworker of plaintiff. Shepard states that she observed plaintiff save work that would later disappear. However, nowhere in Shepard's statement does it say that she informed Kramer of this or that Kramer had any reason to know about it. The assertions by plaintiff and Shepard fail to show that Kramer was dishonest in stating that she believed these errors attributable to plaintiff.

Finally, plaintiff denies that she mailed another policyholder's confidential information to Charles Stewart. In her affidavit, plaintiff states that she contacted Charles Stewart by mail and spoke with him on the telephone. Plaintiff states that Charles Stewart told her that he never received the wrong policy, but that he did get someone else's cover letter. This statement in

-11-

plaintiff's affidavit cannot be considered in determining whether there is a genuine issue of material fact precluding summary judgment. When an affidavit contains an out-of-court statement which is offered for the truth of the statement, it is considered inadmissible hearsay and "may not be used to support or defeat a motion for summary judgment." Brooks v. Tri-systems Inc., 425 F.3d 1105, 1111 (8th Cir. 2005). In this case, plaintiff offers Charles Stewart's statement to prove that the event which triggered her termination was a sham. The statement is hearsay and thus cannot raise a genuine issue of material fact.

Plaintiff has failed to raise a genuine issue of material fact as to whether Kramer believed the reasons she stated for terminating plaintiff' employment. Plaintiff has not submitted any competent evidence to suggest that management's evaluation of her mistakes were merely pretext for firing her on discriminatory grounds. Defendant is entitled to summary judgment as a matter of law on the issue of wrongful termination, because plaintiff has not met her burden of submitting sufficient evidence to show that defendant's stated reasons for terminating her were mere pretext.

### B. **Failure to Promote**

Plaintiff also claims in her complaint that she believed that defendant discriminated against her by failing to promote her. Where there is no direct evidence of discrimination in failure to promote, the McDonnell Douglas burden-shifting analysis applies. Turner v. Honeywell Federal Mfg. and Technologies, 336 F.3d 716,

720 (8th Cir. 2003). A prima facie claim of discrimination in failure to promote is established by the plaintiff showing 1)she is a member of a protected group, 2) she was qualified and applied for a promotion to an available position, 3) she was rejected, and 4) a similarly-situated candidate, not part of the protected group, was hired for the position instead. Pope v. ESA Services 406 F.3d 1001, 1007 (8th Cir. 2005).

In this case, plaintiff has failed to meet the burden of establishing a prima facie case of discrimination. Although plaintiff is a member of a protected class, she presents no evidence that she was qualified and applied for a promotion to an available position. Indeed, in her deposition, plaintiff testified that she never applied for any promotions because she didn't think she'd be successful, either because of her race or because she didn't have a college degree. The plaintiff's belief that her race would prevent her from being promoted does not excuse her from the *prima facie* case requirement of showing that applied for a position for which she was qualified.

### C. Hostile Work Environment

In her complaint, plaintiff alleges that she was "harassed every day when I came to work" and was yelled at and "treated different from the white worker." Plaintiff further expanded upon the abuse she feels she suffered in her deposition. She testified that Jarvis shot her with a rubber band and "raise[d] her voice at [plaintiff] if something wasn't right in policy issuance," that

-13-

Kramer "nitpicked" plaintiff's work and would "stay on [plaintiff's] back all of the time," and that Pozniak committed a number of offensive acts.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, 510 US 17, 21 (1993)(citations omitted). In the Eighth Circuit, a plaintiff must show that 1) she was a member of a protected group, 2) she was subjected to unwelcome race-based harassment, 3) the harassment was because of her membership in the protected group, and 4) the harassment affected a term, condition, or privilege of employment. Elmahdi v. Marriot Hotel Services, 339 F.3d 645, 652 (8th Cir. 2003). Plaintiff has put forth sufficient evidence to carry the first three elements of the claim. She is African-American, and she was subjected to racial comments and epithets which are generally considered offensive.

"Harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment. For harassment to affect a condition of employment the conduct must be severe as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Id. at 652 (citations omitted). Among the factors that may be considered in judging the severity and pervasiveness of the harassment are the frequency, threatening or humiliating nature, and whether it unreasonably interfered with plaintiff' work performance. Id. at 653. The

Eighth Circuit has held that "[r]acial epithets are morally repulsive. But our cases require that a plaintiff show more than a few occurrences over a course of years . . . such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile." Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 893 (8th Cir. 2005).

In the instant case, the infrequency of the racially-offensive comments and the fact that they all came from one source (Pozniak) suggests that the harassment was not "severe and pervasive" enough to rise to the level of actionable conduct. While plaintiff attributes her treatment by other co-workers and supervisors to racial bias, she has presented no evidence that these actions were anything other than conventional unpleasantness. While the use of racial slurs and epithets is never acceptable behavior, the relative infrequency of their use in this case and the absence of other competent evidence of a racially-hostile work environment lead the Court to conclude that the alleged conduct does not rise to the level of actionable harassment.

### D. Age Discrimination

The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, et seq., makes it unlawful for an employer, with respect to any individual who is at least 40 years old:

> "(1) to fail or refuse to hire or to discharge any
> individual or otherwise discriminate against any
> individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of
> such individual's age;
> (2) to limit, segregate, or classify his employees in
> any way which would deprive or tend to deprive any
> individual of employment opportunities or otherwise
> adversely affect his status as an employee, because
> of such individual's age; or
> (3) to reduce the wage rate of any employee in order
> to comply with this chapter."

29 U.S.C. § 623(a).

"[C]laims of age discrimination are also analyzed under the McDonnell Douglas burden-shifting framework . . .  In order to establish a prima facie case of age discrimination, the plaintiff must show that she "(1) is a member of the protected class; (2) was qualified for the position from which [s]he was demoted or discharged; and (3) was replaced by another person." Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004)(citations omitted).

Plaintiff has shown that she is a member of the protected class, being 49 years old at the time of her termination.  However, she has failed to show the third element of a prima facie case of age discrimination.[1]  Nowhere in plaintiff's complaint or subsequent filings is there an allegation that she was replaced by a younger employee or that she was replaced at all.  Because plaintiff failed

---

[1] There is also some question as to whether she has satisfied the second element, qualification for the job.  Defendant does not dispute that plaintiff meets the objective criteria listed in the Policy Specialist Job Description (high school diploma or GED, knowledge of Excel and Microsoft Word).  Defendant's allegations of mistakes made by Plaintiff cast some doubt as to whether she is "detail oriented".

-16-

to present even this minimal showing of age discrimination, defendant is entitled to summary judgment on the issue of age discrimination.

## IV. Conclusion

Plaintiff has failed to raise a genuine issue of material fact as to her claims of race and age discrimination. The Court finds that the defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment [#51] is **GRANTED.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2006.